**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VITO D'ALESSIO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 18-10731(SDW)(ESK) |
| v. | : | |
| | : | |
| | : | **OPINION** |
| COUNTY OF ESSEX, | : | |
| | : | |
| Defendant. | : | November 19, 2021 |
| | : | |
| | : | |

**WIGENTON**, District Judge.

Before this Court are Cross Motions for Summary Judgment brought by Plaintiff Vito D'Alessio ("Plaintiff") and Defendant County of Essex ("Defendant" or "County") pursuant to Federal Rule of Civil Procedure ("Rule") 56 regarding Plaintiff's claim under the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 210 *et seq.* This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Rule 78. For the reasons set forth below, this Court **DENIES** the motions.

## I.    BACKGROUND AND PROCEDURAL HISTORY

At all relevant times, Plaintiff was a Captain with the Essex County Sheriff's Office ("ECSO"). (D.E. 1 ¶ 1; D.E. 67-19 ¶¶ 1-5; D.E. 69-3 ¶¶ 1-5.)[1] In that role, Plaintiff's

---

[1] Citations to "D.E." refer to the docket entries for the parties' motion papers, including briefs, affidavits, declarations, and statements of undisputed facts, and the documents attached to and referenced therein.

responsibilities included "overseeing the Bureau of Narcotics and the Patrol Detective Bureau," processing arrests, taking witness statements, executing search warrants, and conducting or assisting in criminal investigations, as well as a variety of administrative tasks, including supervising personnel, preparing reports, and attending meetings.  (D.E. 67-19 ¶¶ 5, 76, 79; D.E. 69-3 ¶¶ 5, 76, 79; D.E. 68 ¶¶ 5, 7-11; D.E. 70-1 ¶¶ 5, 7-11; D.E. 69-2 Ex. B at 16-19, 55:21-56:14, 72:14-73:17, 110:10-113:14.)  Plaintiff's annual compensation as a Captain was in excess of $100,000.00.[2]

On August 21, 2014, ESCO issued Field Operations Memo 2014-35 ("the Memo") which required that Plaintiff be notified via telephone:

> if one of the following serious or unusual incidents occurs on Essex County property or involves ECSO personnel, equipment and/or facilities:
> - Homicides and suspicious deaths
> - Crimes against a person(s) where injuries are sustained
> - Sex crimes (aggravated/non-aggravated sexual assault and criminal sexual contact) regardless of injuries to the victim(s)
> - Kidnapping, robbery, carjacking, escape, bias crimes and arson regardless of injuries to the victim(s)
> - All crimes or threats of violence involving County Vocational Schools
> - All incidents resulting in life threatening injuries
> - Use of deadly force against a person by any ECSO personnel or law enforcement officer regardless of injury
> - Motor vehicle accidents resulting in death or life-threatening injuries
> - Motor vehicle accidents involving ECSO personnel
> - Missing persons and elopements.

(D.E. 69-2 Ex. D.)

The Memo also required that Plaintiff be notified of "any serious or unusual occurrence not listed above involving any County employee, equipment or facility that may subject the County

---

[2] Although the parties dispute the exact amount of Plaintiff's salary, both agree that it was more than $100,000.00 and his total annual compensation, excluding overtime, was $121,822.00.  (D.E. 68 ¶ 4; D.E. 70-1 ¶ 4.)

to liability" and stated that "[f]ailure to comply with this policy is considered a violation of the Rules and Regulations of the [ECSO] and may result in disciplinary action." (*Id.*)[3]

As a result, Plaintiff believed that when he was "notified of an incident, [he] was to respond," whether he was on duty or not. (D.E. 67-19 ¶¶ 32, 34; D.E. 69-3 ¶¶ 32, 34.) Captain Edward Esposito, a Captain with the ECSO understood the Memo to put Plaintiff "on-call" at all times, (D.E. 67-19 ¶¶ 12-17; D.E. 69-3 ¶¶ 12-17), and Sheriff Armando B. Fontoura ("Sheriff Fontoura") testified that he expected Plaintiff to answer calls or incur his "wrath." (D.E. 67-19 ¶¶ 80-81; D.E. 69-3 ¶¶ 80-81.)   At times, Plaintiff responded to crime scenes in person, and on other occasions he would respond remotely, running "jobs from [his] house or on vacation or at family events or weddings or parties . . ." (D.E. 67-19 ¶¶ 39-41; D.E. 69-3 ¶¶ 39-41; D.E. 69-2 Ex. B at 24:6-8, 32:15-17.)  Plaintiff was issued an ECSO phone and vehicle "equipped with emergency lights and sirens" and used both to respond to events.  (D.E. 69-2 Ex. B at 28:9, 32:21-23, 33:4-9.) Once the Memo took effect, Plaintiff never turned off his ECSO cellphone, answered calls from the ECSO "within a very short duration of time," and could not "remember a vacation or a day off . . . where [he] didn't get a call or an email or a text" requiring his involvement.  (*Id.* at 55:12-14, 63:9-25-64:1-6.)  As a result, Plaintiff repeatedly asked that the ECSO adopt an on-call schedule, but no such schedule was ever implemented.  (D.E. 67-19 ¶¶ 98, 100-04; D.E. 69-3 ¶¶ 98, 100-04.)

Between 2015 and February 1, 2018, when he retired, Plaintiff regularly submitted, and was paid overtime compensation when he responded in-person to a crime scene.  (D.E. 68 ¶¶ 20-25, 42; D.E. 70-1 ¶¶ 20-25, 42.)  Plaintiff did not, however, submit time he spent responding to incidents remotely because he believed that "the only compensation that would be approved is

---

[3] The Memo had no expiration date and was in effect for the remainder of Plaintiff's employment.  (D.E. 69-2 Ex. D; D.E. 67-19 ¶¶ 28-31; D.E. 69-3 ¶¶ 28-31; D.E. 68 ¶¶ 2, 42; D.E. 70-1 ¶ 42.)

when you physically came into work."  (D.E. 67-19 ¶¶ 84-85; D.E. 69-3 ¶¶ 84-85.)  Sheriff Fontoura testified that officers were "on the clock" when they left their home to go to a crime scene, but not when they made or received phone calls regarding an incident.  (D.E. 67-19 ¶ 86; D.E. 69-3 ¶ 86.)

During his deposition, Sheriff Fontoura also testified that he believed that the County is compliant with the FLSA, and that it has "protocols in place through the County resources and County Counsel and . . . Personnel Department" to "mak[e] sure that we are compliant."  (D.E. 67-19 ¶¶ 88, 90; D.E. 69-3 ¶¶ 88, 90.)  Sheriff Fontoura did not recall receiving any training under the FLSA, although he could sign up for such training, and he has no familiarity with the FLSA's requirements.  (D.E. 67-19 ¶ 88; D.E. 69-3 ¶ 88.)  He also acknowledged that the County has been sued by members of the ECSO for FLSA violations "on a few occasions."  (*Id.*)  The County's Director of Personnel, Jim Spango, testified that he has not requested or attended any FLSA training.  (D.E. 67-19 ¶ 92; D.E. 69-3 ¶ 92.)

On June 18, 2018, Plaintiff filed suit in this Court alleging that Defendant willfully, knowingly, and/or recklessly violated the FLSA by failing to pay him for overtime and on-call hours worked.  (*See generally* D.E. 1; D.E. 67-19 ¶¶ 6-7.)  On August 13, 2021, after the close of discovery, the parties filed their motions for summary judgment, and all briefs were timely filed.  (*See* D.E. 67-72.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

## III.    DISCUSSION

Plaintiff seeks recovery of overtime wages under the FLSA, which "regulates, as a general matter, the minimum wages and overtime wages paid to workers." *Min Fu v. Hunan of Morris Food, Inc.*, Civ. No. 12-058719, 2013 WL 5970167, at *4 (D.N.J. Nov. 6, 2013). The FLSA "requires, in relevant part, that employers pay their employees at a rate equal to one-and-a-half times their standard hourly rate for every hour they work in excess of forty during a given week." *Emmons v. City of Chesapeake*, 982 F.3d 245, 250 (4th Cir. 2020); *see also Lin v. Fada Grp., Inc.*, Civ. No. 20-5942, 2021 WL 4963283, at *3 (D.N.J. Oct. 25, 2021) (noting that "[t]he FLSA requires employers to pay overtime compensation for a non-exempt employee's work that exceeds forty hours per week"); *Buchpies v. Pfizer, Inc.*, Civ. No. 18-16083, 2019 WL 5078853, at *2 (D.N.J. Oct. 10, 2019); 29 U.S.C. § 207. In order to recover overtime compensation under the Act, "an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014). Here, the Court is asked to determine: 1) if Plaintiff is an exempt employee under the FLSA, 2) if the time Plaintiff spent on-

call is compensable under the Act, and 3) if Defendants willfully violated the FLSA.  This Court addresses each issue in turn.

A.

Although the FLSA grants employees the right to sue for overtime, "[c]ertain employees are exempt from the overtime wage requirements."  *Raskas v. Lattice, Inc.*, Civ. No. 18-10332, 2019 WL 2865423, at *3 (D.N.J. July 3, 2019).  Exemptions are to be "narrowly construed against the employer" who bears "the burden of establishing an exemption."  *Pignataro v. Port Auth.*, 593 F.3d 265, 268 (3d Cir. 2010).  Pursuant to 29 U.S.C. § 213(a)(1), "any employee employed in a bona fide executive, administrative, or professional capacity . . . is exempt from overtime requirements."  *Id.*; *see also Alvarez v. Chipotle Mexican Grill, Inc.*, Civ. No. 17-4095, 2020 WL 10140954, at *1 (D.N.J. June 18, 2020).  More specifically, "[a]n employee with a total annual compensation of at least $100,000.00 is deemed exempt under section 13(a)(1) of the [FLSA] if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified" in the relevant federal regulations.  29 C.F.R. § 541.601(a).  Administrative employees are those "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and . . . [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200.  Executive employees are those "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof" and "[w]ho customarily and regularly directs the work of two or more other employees; and . . . [w]ho has the authority to hire or fire other employees or whose

7

suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a).

These exemptions, however, do not apply to "police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors . . . regardless of rank or pay level, who perform work such as . . . preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work" provided their primary duties are investigative and not managerial.  29 C.F.R. § 541.3 (the "First Responder Regulation"). [4]  A "primary duty" is "the

---

[4] The regulation more specifically provides that:

> (1)[t]he section 13(a)(1) exemptions and the regulations in this part also do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors . . . regardless of rank or pay level, who perform work such as . . . preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.
>
> (2) Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof as required under § 541.100. Thus, for example, a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not exempt under section 13(a)(1) of the Act merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire.
>
> (3) Such employees do not qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management or general business operations of the employer or the employer's customers as required under § 541.200.
>
> (4) Such employees do not qualify as exempt professionals because their primary duty is not the performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction or the performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor as required under § 541.300. Although some police officers, fire fighters, paramedics, emergency medical technicians and similar employees have college degrees, a specialized academic degree is not a standard prerequisite for employment in such occupations.

29 C.F.R. § 541.3(b).

principal, main, major, or most important duty that the employee performs."   29 C.F.R. § 541.700(a).

The issue before this Court, then, is whether the record evidence would permit a reasonable factfinder to determine that Plaintiff was an exempt employee under the FLSA.   Defendant contends that Plaintiff is a highly compensated employee under 29 C.F.R. § 541.60 and exempt from coverage under the Act because Plaintiff's annual compensation exceeded $100,000.00 and his primary duties were supervisory and administrative.   (D.E. 69 at 5-7; D.E. 68 at 10-12; D.E. 72 at 1-3.)   In contrast, Plaintiff argues that he falls under the "First Responder Regulation" and is entitled to overtime under the FLSA.   (D.E. 71 at 9-10; D.E. 67-20 at 13-15; D.E. 70 at 8-11.)   The record evidence indicates that Plaintiff took on a wide array of law enforcement *and* administrative duties.   Plaintiff testified that he was responsible for a number of managerial and administrative tasks including overseeing two departments, managing personnel, preparing reports and press releases, and running and attending meetings. (D.E. 69-2 at Ex. B at 16-19, 55:21-56:14, 72:14-73:17, 110:10-113:14.)   However, Plaintiff also responded to crime scenes, investigated crimes, apprehended suspects, interviewed witnesses, and performed a variety of law-enforcement functions.   (*See* D.E. 67-19 ¶¶ 32-51, 64-66, 79.)   The record does not, however, clearly explicate what Plaintiff's "primary" duties were.   Because the nature of Plaintiff's primary duties determines whether he is subject to or exempt from the FLSA, there is a genuine issue of material fact as to Plaintiff's status under the Act, and summary judgment on this issue will be denied.

B.

This Court must next consider whether Plaintiff's on-call hours are compensable under the FLSA.   "[A]n on-call employee, who is not required to remain on his employer's premises, may be entitled to compensation if the employee 'finds his time on-call . . . is so restricted that it

interferes with personal pursuits.'" *Bansept v. G&M Auto.*, Civ. No. 18-4679, 2021 WL 3784241, at *3 (E.D. Pa. Aug. 26, 2021) (citing *Ingram v. County of Bucks*, 144 F.3d 265, 268 (3d Cir. 1998)).   To determine whether an employee's off-premises on-call time is compensable, a court must consider: "(1) whether the employee may carry a beeper or leave home; (2) the frequency of calls and the nature of the employer's demands; (3) the employee's ability to maintain a flexible on-call schedule and switch on-call shifts; and (4) whether the employee actually engaged in personal activities during on-call time." *Ingram*, 144 F.3d at 268.   "[T]he issue of how a plaintiff spends his on-call time is one of fact and, therefore, cannot be resolved on summary judgment." *Id.* at 267.   Summary judgment, therefore, "is appropriate only in the absence of any 'genuine issues of material fact as to how a plaintiff spends his on-call time.'" *Bansept*, 2021 WL 3784241 at *3 (citing *Ingram*, 144 F.3d at 267).

Here, there is no dispute that Plaintiff was permitted to carry his department issued phone and leave home while on-call.   Indeed, Plaintiff testified that he was able to go on vacation, travel to his children's sporting events, and attend family functions while off-duty and respond remotely to a notification when necessary.   (D.E. 69-2 Ex. B at 38:6-18, 40:15-18, 43:5-10, 14-16, 49:5-22, 50:21-51:21, 52:3-24.)   The frequency of the calls Plaintiff received, however, is in dispute. Defendant contends that Plaintiff received notifications three to four times a week, (*see* D.E. 69-2 Ex. B 138:16-20) and some of the calls occurred while Plaintiff was on duty, (*see id*. 139:1-18), while Plaintiff argues that the number of calls he received was so large that it significantly impeded his personal life.   (D.E. 67-19 ¶¶ 54-74.)   This is a factual question a jury must resolve.   A jury must also determine if the frequency of those calls "is so restrictive that it interfere[d] with [Plaintiff's] personal pursuits." *Ingram*, 144 F.3d at 268.

The question of whether Plaintiff was able to maintain a flexible on-call schedule and switch on-call shifts is also a factual dispute appropriate for a jury.  Although the ECSO did not have an official on-call schedule and the Memo required that Plaintiff be notified of the occurrence of any of the listed incidents, Plaintiff was able to delegate to others when he was unable to physically respond to a crime scene or was unable to otherwise manage the incident.  (D.E. 69-2 Ex. B. at 55:2-11; D.E. 67-19 ¶¶ 45-46.)  Finally, there is a factual dispute as to the fourth factor, whether Plaintiff engaged in personal activities during his on-call time.  Although it is clear that Plaintiff went on vacation, attended family functions and sporting events when he was off duty, he also testified that the frequency of the calls he received, and the effort required to appropriately respond, limited his ability to meaningfully engage in those activities.  (D.E. 67-19 ¶¶ 54-74; D.E. 69-2 Ex. B at 138:21-140:5.)  Taken as a whole, the *Ingram* factors weigh in favor of denying the parties' motions for summary judgment and permitting a jury to resolve the factual disputes regarding Plaintiff's on-call time.

## C.

Claims brought under the FLSA are subject to a two-year statute of limitations period unless the alleged violation is willful, in which case a three-year period applies.  *See Stone v. Troy Constr., LLC*, 935 F.3d 141, 148 (3d Cir. 2019); *see also Souryavong v. Lackawanna County*, 872 F.3d 122, 126 (3d Cir. 2017) (noting that a finding that an employer acted willfully "is of import because such a finding extends the FLSA's limitations period from two years to three, bringing another year of lost pay within the scope of the worker's claim"); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988).  Willful violation of the Act also exposes a defendant to the payment of liquidated damages.  *See* 29 U.S.C. § 216(b).[5]  A violation under the FLSA is willful,

---

[5] "If an employer violates the overtime and minimum wage provision of the FLSA, an employee is entitled to his 'unpaid overtime compensation . . . an[d] in an additional equal amount as liquidated damages.'"  *Saiyed v. Archon,*

11

"if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . .'" *Freeman v. Sam's East, Inc.*, Civ. No. 17-1786, 2021 WL 3362611, at *2 (D.N.J. Aug. 3, 2021) (citing *McLaughlin*, 486 U.S. at 132-33). "An employer's awareness of possible violations of the FLSA, together with an 'indifference toward the requirements imposed' by the statute supports a finding of willfulness." *Lin*, 2021 WL 4963283 at *4 (citing *Garcia v. Tenafly Gourmet Farms, Inc.*, Civ. No. 11-6828, 2012 WL 715316, at *2 (D.N.J. Mar. 5, 2012)).

Here, the nature of Defendant's actions is in dispute. It is true that the County has previously been sued by ECSO employees for violations of the FLSA and that Sheriff Fontoura was aware of those suits. (D.E. 67-19 ¶ 88; D.E. 69-3 ¶ 88.) Further, neither Sheriff Fontoura nor the County's Director of Personnel Jim Spango have requested or participated in FLSA training. (D.E. 67-19 ¶¶ 88, 92; D.E. 69-3 ¶¶ 88, 92.) However, Sheriff Fontoura also testified that he believed the County to be in compliance with the FLSA and relied on County Counsel and his Personnel Office to ensure that ECSO was following the law. (D.E. 67-19 ¶¶ 88, 90; D.E. 69-3 ¶¶ 88, 90.) Further, the County did pay overtime that Plaintiff submitted, indicating that there is not a blanket policy to deny overtime to employees. Taken as a whole, there is a genuine issue of material fact as to whether Defendant had any "awareness of impropriety" or acted in a way that suggested "awareness that their actions violated or could violate the FLSA." *Freeman*, 2021 WL 3362611 at *3. This is a question for a jury, and as such, the parties' motions for summary judgment on this issue will be denied.

---

*Inc.*, Civ. No. 16-9530, 2021 WL 3561219, at *4 (D.N.J. Aug. 11, 2021) (citing *Davis*, 765 F.3d at 241). To avoid this liability, an employer must show "good faith" and "reasonable grounds" for believing that his act or omission was not a violation of the" FLSA. *Martin Selker Bros., Inc.*, 949 F.2d 1286, 1299 (3d Cir. 1991) (internal citation omitted). Because there is factual dispute as to the nature of Defendant's actions, consideration of the existence of a good faith defense is inappropriate at this time.

**IV.    CONCLUSION**

For the reasons set forth above, the parties' cross-motions for summary judgment will be

**DENIED**.  An appropriate order follows.


                                          ____/s/ Susan D. Wigenton_____
                                          **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Edward S. Kiel, U.S.M.J.
         Parties